IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| SANH BINH TRAN,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | No.  4:23-cv-00351-SHL<br><br><br>**ORDER DENYING IN PART, RESERVING RULING IN PART, AND SETTING A HEARING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |

Petitioner Sanh Binh Tran alleges that his trial counsel made a litany of errors that contributed to Tran's convictions for conspiracy to distribute marijuana, possession with intent to distribute marijuana, and carrying a firearm during and in relation to a drug trafficking crime. In many respects, the alleged errors identified by Tran did not amount to ineffective assistance of counsel and/or did not result in prejudice. But there are a few issues involving plea negotiations for which a hearing is required, as well as one conflict-of-interest issue. The Court therefore DENIES IN PART and RESERVES RULING IN PART on Tran's Motion to Vacate, Set Aside, or Correct Sentence. An evidentiary hearing will be set for July 17, 2026, at 10:00 a.m. in the U.S. District Courthouse in Council Bluffs, Iowa. Counsel will be appointed to represent Tran pursuant to the Criminal Justice Act.

I.      BACKGROUND.

This case arose from three traffic stops in Mississippi on November 2, 2018; in Iowa on December 21, 2018; and in Nebraska on March 1, 2019, respectively. Hieu Minh Le was driving the vehicle during the first and third stops, and Tran was driving the vehicle during the second stop. Tu Anh Nguyen was a passenger in the vehicle during all three stops. During each stop, THC oil, marijuana, or both were found, and a firearm was found in the cab of the vehicle during the second stop. A more complete recitation of facts is found in *United States v. Nguyen*, 59 F.4th 958, 963 (8th Cir. 2023).

In January 2019, a grand jury in the Southern District of Iowa returned a one-count Indictment charging Tran and Nguyen with possession with intent to distribute at least 100 kilograms of marijuana. (Crim. Dkt.[1] ECF 5.) Tran appeared at his initial appearance and

---

[1] All references to "Crim. Dkt." are to the electronic case filing (ECF) docket in Tran's underlying criminal case, Case

arraignment with retained counsel William McGinn, together with a Vietnamese interpreter. (Crim. Dkt. ECF 11, ECF 22.) Tran was temporarily detained but subsequently released on bond. (Crim. Dkt. ECF 25.) Shortly thereafter, a grand jury in the Southern District of Iowa returned a Superseding Indictment charging Le as an additional co-defendant and adding a charge against all three defendants for conspiracy to distribute at least 100 kilograms of marijuana. (Crim. Dkt. ECF 33.) On May 21, 2019, McGinn filed a Written Waiver of Personal Appearance at Arraignment signed by Tran and a Motion to Continue Trial, which was granted. (Crim. Dkt. ECF 39, ECF 42, ECF 45.)

Following Le's arrest on June 4, 2019, McGinn also entered an appearance for him as retained counsel. (Crim. Dkt. ECF 48.) At his initial appearance and arraignment on June 20, 2019, Le appeared with CJA panel attorney Stuart Dornan, and McGinn—who was also present—moved to withdraw as counsel for Le. (Crim. Dkt. ECF 50, ECF 54.) The Court granted the motion to withdraw and appointed Dornan as Le's counsel, with Dornan eventually entering an appearance as retained counsel. (Crim. Dkt. ECF 53, ECF 56, ECF 61.) On December 30, 2019, a grand jury returned a Second Superseding Indictment, adding an additional count against Tran and Nguyen for possession of a firearm in furtherance of drug trafficking. (Crim. Dkt. ECF 82.) Tran and McGinn again signed a Written Waiver of Personal Appearance at Arraignment. (Crim. Dkt. ECF 94.)

In December 2019, Le filed a motion to suppress evidence obtained during searches of the vehicle and trailer on December 21, 2018. (Crim. Dkt. ECF 72.) Nguyen and Tran joined the Motion. (Crim. Dkt. ECF 73, ECF 78.) At the hearing, Le's counsel took the lead, with McGinn not objecting or cross-examining any witnesses. (Crim. Dkt. ECF 120.) The Court (Jarvey, C.J.) denied the Motion to Suppress. (Crim. Dkt. ECF 103.) Le and Nguyen later filed additional motions to suppress relating to searches that did not involve Tran. (Crim. Dkt. ECF 104, ECF 105, ECF 167.) The second motion was granted in part and denied in part, while the third motion was granted in its entirety. (Crim. Dkt. ECF 152, ECF 162, ECF 171.)

Trial was continued several times. (Crim. Dkt. ECF 45, ECF 65, ECF 71, ECF 101, ECF 111, ECF 125, ECF 128, ECF 145, ECF 157.) In September 2020, McGinn filed a waiver of Tran's speedy trial rights. McGinn represented that he spoke to Tran "via telephone regarding waiving his speedy trial rights" and that Tran "stated he understands his rights and he agreed to

No. 1:19-cr-00004 (S.D. Iowa). All references to "2255 Dkt." are to the ECF docket in this post-conviction review case, Case No. 4:23-cv-00351 (S.D. Iowa).

2

allow counsel to waive his speedy trial rights." (Crim. Dkt. ECF 148.) The filing makes no mention of an interpreter. Tran signed another document reiterating the statements made in the prior form and indicating that he had "been provided a translation of this document in [his] native Vietnamese language." (Crim. Dkt. ECF 151.)

The (final) Order setting trial established a plea entry deadline of March 15, 2021. (Crim. Dkt. ECF 157.) Tran did not plead guilty. Meanwhile, on March 18, Le file a motion, through counsel, to proceed pro se. (Crim. Dkt. ECF 172.) The motion stated that Le was "uncomfortable with [Dornan] representing him at trial, and that having [Dornan] represent [Le] at trial is not to [Le's] advantage." (Id.) The Court entered a text order setting a hearing on the motion for the morning of the first day of trial, and specified "[i]f the defendant is permitted to represent himself, he must be prepared for trial as scheduled on 3/29/2021. The granting of the motion will not be grounds for a continuance." (Crim. Dkt. ECF 173.)

In advance of trial, the Government and counsel for Le and Nguyen each filed trial briefs. (Crim. Dkt. ECF 176, ECF 183, ECF 185.) McGinn did not file one on behalf of Tran or move to join the briefs filed by Le or Nguyen. Similarly, the Government and counsel for Le and Nguyen filed motions in limine and/or responses to other parties' motions. (Crim. Dkt. ECF 179, ECF 180, ECF 182, ECF 184, ECF 186, ECF 187). Le and Nguyen's motions sought, in part, to exclude statements made by Tran or to sever their trials from Tran's trial. (Crim. Dkt. ECF 180, ECF 187.) McGinn did not file a motion in limine or a response to the Government's motion.

On March 29, 2021, the first morning of trial, the Court held a hearing regarding Le's motion to proceed pro se. (Crim. Dkt. ECF 230, pp. 3–12.) Ultimately, Le elected to proceed with Dornan as his attorney, although he accused the Court of violating his due process rights and insisted that Dornan's continued representation was a conflict of interest based on a complaint Le filed two days earlier with the Iowa Supreme Court Attorney Disciplinary Board. (See Crim. Dkt. ECF 190-1.). Le and Dornan continued to have issues as the case proceeded to trial, with Le eventually being held in contempt for refusing to follow Court orders (Crim. Dkt. ECF 230, pp. 26, 29, 79) and failing to appear on time for jury selection (id. p. 91) and Dornan unsuccessfully renewing his motion to withdraw as counsel (Crim. Dkt. ECF 231, p. 3).

McGinn actively participated in the trial, albeit less extensively than counsel for Tran's co-defendants. He participated in voir dire for just three minutes with the morning panel and one minute in the afternoon. (See Crim. Dkt. ECF 194.) His opening statement lasted two minutes. (See Crim. Dkt. ECF 195.) His cross-examination of the officer who completed the traffic stop involving Tran took three minutes and covers less than three transcript pages. (Crim Dkt. ECF

195; ECF 231, pp. 106–09.) He briefly cross-examined five other witnesses. (Crim. Dkt. ECF 231, pp. 149–50; ECF 234, pp. 16–18, 143–44, 158, 212–14.) On the final day of trial, his closing argument implicitly explained why he participated in such a limited way: the only evidence directly linking Tran to the crime was the fact that he was driving the truck at the time of the second stop. (ECF 233, pp. 29–34.) McGinn argued that there was no evidence showing that Tran owned the truck or trailer, ever touched the radios in the truck, had any involvement in forming the business that owned the truck, or had exclusive control over the truck or trailer. (Id.) Accordingly, in his words, the evidence "do[es]n't show that my client had any idea of what was in the back of that truck. He's just driving a truck." (Id., p. 33.)

Incidentally, Tran and his co-Defendants failed to appear for trial on March 31. (*See* Crim. Dkt. ECF 196.) Defense counsel represented that they had heard nothing from their respective clients. (Crim. Dkt. ECF 234, p. 3.) The attorneys requested a continuance, which the Court denied. (Id.) Consistent with an earlier warning (Crim. Dkt. ECF 230, p. 91), the Court issued arrest warrants for each defendant (Crim. Dkt. ECF 197–99) and trial proceeded in their absence (*see* Crim. Dkt. ECF 234). At the close of evidence, McGinn orally moved for judgment of acquittal, which was joined by Nguyen. (Id., pp. 229–30.) Le made a separate motion. (Id., p. 230.) All motions were denied. (Id., pp. 592–93.) Defendants were arrested on April 1, 2021 (Crim. Dkt. ECF 209–11) and they were personally present for the last day of trial, although none of them testified (*see* Crim. Dkt. ECF 213). Following closing arguments, the jury deliberated for less than five hours before reaching guilty verdicts against all Defendants on all charges. (Id.; Crim. Dkt. ECF 216.)

The following week, Dornan filed a motion to withdraw as Le's counsel based on Le having filed a malpractice lawsuit against him, Case No. 1:21-cv-10 (S.D. Iowa). (Crim Dkt. ECF 226.) This time, the motion to withdraw was granted. (Crim. Dkt. ECF 228.) A new attorney, Robert Sirianni, Jr., then appeared pro hac vice to represent Le. (Crim. Dkt. ECF 242.) A second attorney, George William Thomas—who worked at the same law firm as Sirianni—filed a notice of appearance on behalf Tran and Nguyen. (Crim. Dkt. ECF 244.) This prompted Nguyen's trial counsel (Federal Public Defenders Brad Hansen and Michael Maloney) to move to withdraw, which led Magistrate Judge Celeste Bremer to set the matter for hearing. (Crim. Dkt. ECF 245, ECF 249.) In the meantime, the new lawyers (Thomas and Sirianni) filed Motions for Judgment of Acquittal as to all three co-defendants (Crim. Dkt. ECF 250–53) and McGinn moved to withdraw as Tran's counsel (Crim. Dkt. ECF 255).

Prior to the hearing with Judge Bremer, Thomas and Siranni filed Notices of Joint Representation on behalf of the three co-defendants. (Crim. Dkt. ECF 256, ECF 257.) The notices indicated that counsel "conducted careful investigation of potential conflicts of interest" and determined "no conflict of interest is foreseeable." (Id.) The filing for Tran included an "ALTA Language Services, Inc. Translation Certification" representing that the waiver of conflict notice and explanatory letter had been translated from English to Vietnamese. (Crim. Dkt. ECF 257, pp. 4, 9.) The translated documents were included with the filing. (Id., pp. 10, 11.)

All three defendants appeared with attorneys McGinn, Hansen, Sirianni, and Thomas at the hearing with Judge Bremer on April 30, 2021. (Crim. Dkt. ECF 268, pp. 2–3.) Following a colloquy on the record—during which Judge Bremer expressed serious concerns regarding the sufficiency of the waiver—Thomas and Sirianni orally moved to withdraw their Notices of Joint Representation. (Id., p. 24.) Judge Bremer told Tran that Thomas could represent him on appeal, but that McGinn would remain his attorney through sentencing. (Id., p. 26.) McGinn agreed to remain counsel, but explained that the retainer was gone, and asked to be appointed through the Criminal Justice Act ("CJA"). (Id.) Bremer then asked Tran:

> THE COURT: So, Mr. Tran, do you want to go ahead and have Mr. McGinn represent you?
>
> MR. McGINN: Through sentencing.
>
> THE COURT: Through sentencing, yes. Thank you.
>
> DEFENDANT TRAN: No.

(Id., p. 27.) Judge Bremer proceeded to explain the conflict issue and asked Tran why he thought it wasn't a conflict. Tran responded:

> DEFENDANT TRAN: I would use a new attorney that could help me prove my innocence. Mr. McGinn so far has not been very effective in helping me.
>
> THE COURT: And I'm sorry. I didn't hear about the third word. I would use what to prove my innocence?
>
> DEFENDANT TRAN: I would like to use a new attorney who could help me prove my innocence. Mr. McGinn has been helping me, but he has not been able to do that.

(Id., p. 28.) Judge Bremer noted that this was "a different issue than whether you want one attorney to try to represent all three defendants." (Id.) She explained that the Court could appoint counsel (given that the retainer was exhausted), and if Tran wanted new counsel for sentencing, she would appoint someone. (Id., p. 29.) Tran reiterated that he wanted Thomas to represent him and stated that he understood he would need to waive any conflict of interest. (Id., p. 30.) Sirianni

responded that he and Thomas were "bow[ing] out" of representing Tran and Nguyen at sentencing. (Id., p. 31.) Judge Bremer then reiterated that Tran's options were to keep McGinn or have someone new (i.e., not Thomas) appointed. (Id., pp. 32–33.) Tran agreed to keep McGinn as his attorney. (Id.; Crim. Dkt. ECF 259.) By contrast, Nguyen opted for new counsel, with Rockne Cole entering an appearance as retained counsel and Federal Public Defenders Hansen and Maloney withdrawing. (Crim. Dkt. ECF 265–67.)

In an Order dated June 8, 2021, the Court denied the Motions for Judgement of Acquittal or New Trial as to each Defendant. (Crim. Dkt. ECF 286.) The Court concluded there was sufficient evidence to show each Defendant's knowledge of the marijuana in the vehicles/trailers and to demonstrate their intent to participate in a conspiracy. (Crim. Dkt. ECF 286, pp. 3–6.) The Court similarly concluded there was sufficient evidence to establish the firearm offense. (Id., pp. 6–7.) Finally, the Court concluded it was proper to proceed with the third day of trial in Defendants' absence, as well as provide the jury with the "voluntary absence" instruction. (Id., pp. 7–9.)

McGinn did not file any objections on Tran's behalf to the Presentence Investigation Report, nor did he file a sentencing brief or letters of support. (*See* Crim. Dkt. ECF 302, p. 35.) At the beginning of the sentencing hearing, Chief Judge Jarvey stated that he "visited with counsel in chambers just prior to this hearing and indicated that the Court had no desire to impose a sentence greater than the 120-month mandatory minimum." (Crim. Dkt. ECF 342, p. 3.) Accordingly, the Court imposed a mandatory minimum sentence of sixty months as to each of Counts One and Two, to run concurrently, and a mandatory minimum sentence of sixty months on Ground Three, to run consecutively (as required by statute). (Crim. Dkt. ECF 323.) Tran chose not to allocute. (Crim. Dkt. ECF 322.) Nguyen and Le received the same total sentences. (Crim. Dkt. ECF 316, ECF 325.)

McGinn timely filed a Notice of Appeal from the final judgment Tran's behalf. (Crim. Dkt. ECF 329.) Thomas entered an appearance as retained counsel on appeal, thus ending McGinn's involvement. (Crim. Dkt. ECF 338, ECF 350.) The Eighth Circuit affirmed the convictions and sentences, rejecting Defendants' challenges to the denial of the motion to suppress and regarding the sufficiency of the evidence. *See Nguyen*, 59 F.4th at 965. Le filed a petition for a writ of certiorari, which the Supreme Court denied. *Le v. United States*, 144 S. Ct. 103 (2023).

Tran moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (2255 Dkt. ECF 1.) His motion alleges ineffective assistance of counsel in the following ways: (a)

constructive denial of counsel based on McGinn's alleged failure to meet with Tran privately or communicate with him prior to the first day of trial other than an initial consultation with co-Defendants present; (b) failure to investigate claims and defenses; (c) failure to warn Tran regarding the impact of a § 924(c) conviction; (d) failure to explain the risk of going to trial versus accepting a plea agreement; (e) failure to communicate plea offers; and (f) a conflict of interest because co-defendant Le paid McGinn to represent Tran. (Id., pp. 15–18.) Tran asks the Court to vacate his conviction and order the Government to extend any plea offers that were not communicated to Tran. (Id., p. 12.) McGinn submitted an affidavit refuting Tran's allegations. (2255 Dkt. ECF 4.) According to McGinn, "[a]s the matter proceeded to trial, discussions were held between counsel and the defendant. The defendant declined the proposed plea agreement and elected to proceed to trial." (Id., ¶ 2.) McGinn further asserts that he talked with Tran about proffering and advised him of the maximum possible punishment and the risks of going to trial. (Id., ¶¶ 3, 4.) "[Tran] gave no indication of wanting to proffer nor did he react to [McGinn's] inquiry about giving [McGinn] authority to negotiate a plea agreement on [Tran's] behalf." (Id., ¶ 5.)

## II.     LEGAL STANDARDS.

"Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007). However, "Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982) and *United States v. Smith*, 843 F.2d 1148, 1139 (8th Cir. 1988) (per curiam)). Proving actual innocence is one way for a defendant to obtain post-conviction relief despite procedural default. *See Dejan v. United States*, 208 F.3d 682, 685–86 (8th Cir. 2000).

A showing of ineffective assistance of counsel also typically "satisfies both cause and prejudice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). The Sixth Amendment guarantees a criminal defendant's right to "effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "Generally, to be successful on a claim of ineffective assistance of counsel, a defendant must 'show both deficient performance by counsel and prejudice to the defense caused by that performance.'" *Thomas v. United States*, 737 F.3d 1202, 1207 (8th

Cir. 2013) (quoting *Barger v. United States*, 204 F.3d 1180, 1181 (8th Cir. 2000)). "Deficiency means that counsel's performance fell below an objective standard of reasonableness, and prejudice means that, but for counsel's errors, a reasonable probability exists that the result of the sentencing would have been different." *Deltoro-Aguilera v. United States*, 625 F.3d 434, 437 (8th Cir. 2010). "The defendant bears the burden to overcome the strong presumption that counsel's performance was reasonable." *Thomas*, 737 F.3d at 1207. "However, strategic choices made due to a lack of preparation or investigation are not protected by the same presumption." *Id.* "An attorney is not incompetent in exercising reasonable professional judgment even when, in hindsight, the decision may have been a mistake. But, an attorney must conduct more than a cursory investigation." *Id.*

"Evidentiary hearings on 28 U.S.C. § 2255 motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists." *Id.* at 1206. "The district court is not permitted to make a credibility determination on the affidavits alone; thus if the decision turns on credibility, the district court must conduct a hearing." *Id.* "An evidentiary hearing may be denied, however, if the motion, files, and records of the case conclusively show that the movant is not entitled to relief." *Id.*

## III.    LEGAL ANALYSIS.

### A.  Constructive Denial of Counsel.

Tran's first alleged error is the constructive denial of counsel. Tran cites to *United States v. Cronic*, 466 U.S. 648 (1984), in which the Supreme Court recognized a presumption-of-prejudice exception to *Strickland*. This "limited exception" applies when "(1) assistance of counsel has been denied completely, (2) 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing,' or (3) counsel is denied during a critical stage of the proceedings." *Freeman v. Graves*, 317 F.3d 898, 900 (8th Cir. 2003) (quoting *Cronic*, 466 U.S. at 658–59). "Critical stages include arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea." *Missouri v. Frye*, 566 U.S. 134, 140 (2012). "Critical stages also can include steps in the proceedings in which the accused is confronted by the procedural system or the prosecutor or both, and where available defenses may be irretrievably lost." *Smith v. Lockhart*, 923 F.2d 1314, 1319 (8th Cir. 1991) (citing *United States v. Gouveia*, 467 U.S. 180, 189 (1984) and *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961)).

The Eighth Circuit "ha[s] interpreted the *Cronic* exception 'very narrowly and rarely have found a situation that justifies application of the presumption of prejudice.'" *Freeman*, 317 F.3d

at 900. (quoting *Fink v. Lockhart*, 823 F.2d 204, 206 (8th Cir. 1987)). For example, in *United States v. White*, 341 F.3d 673 (8th Cir. 2003), counsel failed to conduct any independent investigation of the case and "called no witnesses, offered no exhibits, requested no jury instructions, failed to submit a trial brief, and participated in trial solely through cross-examinations which he did not prepare ahead of time." *Id.* at 678. Even still, the Eighth Circuit found that the attorney participated in the case to a sufficient degree that the defendant was not completely without counsel. Accordingly, *White* did not presume prejudice. *Id.* at 678–80. Similarly, other circuits have held that even the last-minute appointment of counsel is not enough to warrant a presumption of ineffective assistance. *See, e.g.*, *Praylow v. Martin*, 761 F.2d 179, 183 (4th Cir. 1985) (holding that appointment of counsel the day of trial does not justify a finding of presumed prejudice under *Cronic*); *see also Graves v. Padula,* 773 F. Supp. 2d 611, 620 (D.S.C.) ("[T]here is no controlling case law in this circuit holding that the entire pre-trial period is a 'critical stage' for purposes of evaluating ineffective assistance of counsel under *Cronic*."), *aff'd in part, appeal dismissed in part*, 394 F. App'x 978 (4th Cir. 2010).

Here, there is a factual dispute between Tran and McGinn about the level of communication they had prior to trial. Tran alleges that he met with McGinn once prior to trial, as part of an initial consultation with other Defendants, and that McGinn "never privately met with Tran, and then never communicated with Tran until the first day of trial." (2255 Dtk. ECF 1, p. 15.) Tran further alleges that the "only correspondence [he] recall[ed] receiving from Mr. McGinn between [his] initial consultation and the first day of trial was a letter 'form' regarding waiving [his] in-person appearance at a hearing due to COVID-19. Otherwise, I did not communicate with Mr. McGinn." (2255 Dtk. ECF 8, p. 3.) For his part, McGinn broadly asserts that "[a]s the matter proceeded to trial, discussions were held between counsel and the defendant"; "[d]uring the course of representation, I advised defendant that how he wanted to proceed was his decision alone"; "I had discussions with him about a proffer and explained it to him"; and "I advised him of the maximum possible punishment and risks of going to trial." (2255 Dtk. ECF 4, ¶¶ 2–4.) McGinn does not, however, identify specific dates or times when these conversations took place beyond "June of 2019," nor does he provide contemporaneous records like notes, time sheets, or emails to support his statement. He also does not say whether these interactions occurred in person, over the phone, or in writing or explain whether a Vietnamese interpreter was involved.

In one sense the record refutes Tran's allegations. He claims there was <u>no</u> communication between himself and McGinn between the initial consultation and trial, but the record shows that McGinn appeared with him at his original arraignment. (Crim. Dkt. ECF 11.) In addition, McGinn

filed two waivers of written appearance, both of which contained Tran's signature. (Crim. Dkt. ECF 39, ECF 94.) Similarly, McGinn filed multiple documents relating to waiver of speedy trial rights. In the first two, McGinn asserted that he spoke to Tran via telephone regarding the waiver. (Crim Dkt. ECF 148, ECF 150.) In the next filing, Tran indicated that he had been provided translated copies of the document. (Crim. Dkt. ECF 151.) Clearly there was communication in connection with those filings (although the filings identify either September 21 or September 22 as the date of the conversation, and it is not clear whether conversations took place on one or both dates, or whether this is a typo). Tran also appeared with McGinn at the motion to suppress hearing on January 3, 2020. (Crim. Dkt. ECF 93, ECF 120, p. 3.)

The Court will give Tran every benefit of the doubt by concluding that there were no communications between him and McGinn other than the communications for which there is irrefutable proof in the record. Even so, this is not a case where assistance of counsel has been denied completely or where counsel was utterly absent during a critical stage of the proceedings. *See Cronic*, 466 U.S. at 658–59; *compare with Mitchell v. Mason*, 325 F.3d 732, 742 (6th Cir. 2003) (presumption applied where counsel was suspended from the practice of law for the month immediately preceding trial, counsel met with defendant for no more than six minutes over the seven-month period before trial, and the trial court repeatedly ignored letters from defendant seeking different counsel). To the contrary, the trial transcript shows McGinn participating in a meaningful way to test the prosecution's case, including (among other things) by giving a succinct but impactful closing argument that emphasized the shortcomings of the evidence against Tran. This is nowhere near the type of "complete" failure that would give rise to a presumption of prejudice. *See Bell v. Cone*, 535 U.S. 685, 696–97 (2002) ("When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. . . . For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind."). Accordingly, Tran's request for postconviction relief based on constructive denial of counsel is denied. The Court instead will consider Tran's specific allegations of deficient performance without applying a presumption for prejudice.

   B.  *Failure to Investigate Claims and Defenses.*

Tran's first specific allegation is that McGinn was deficient for failing to investigate claims and defenses. "While 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,' 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support

the limitations on investigation.'" *McLaughlin v. Precythe*, 9 F.4th 819, 827 (8th Cir. 2021) (quoting *Stickland*, 466 U.S. at 690–91). "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* (quoting *Strickland*, 466 U.S. at 691). "In assessing counsel's investigation, we must conduct an objective review of their performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Id.* at 827–28 (quoting *Wiggins v. Smith*, 539 U.S. 510, 523 (2003)). It is "strongly presumed" that counsel made reasonable decisions. *Id.* at 828 (quoting *Strickland*, 466 U.S. at 690).

Tran claims that McGinn "conducted no investigation in this case whatsoever." (2255 Dkt. ECF 1, p. 16.) He further states that he requested his client file from McGinn and received nothing. (Id.) Tran argues that if McGinn had conducted an appropriate investigation, "there is a reasonable probability that had Tran made the decision to proceed to trial (very unlikely), that Tran would have prevailed at trial." (Id.) More specifically, Tran alleges that adequate investigation would have shown that Tran was paid modest sums for driving the truck; Nguyen and Le never told Tran they were hauling marijuana; and that Tran, unlike Nguyen and Le, had not previously been caught with marijuana or large sums of cash. (Id.)[2]

In his affidavit, McGinn does not respond to the allegations regarding his failure to produce a client file. (*See* 2255 Dkt. ECF 4.) He also does not assert that he conducted any investigation of claims or defenses, let alone provide details of any investigation. McGinn states only that "[o]ur strategy was to challenge the sufficiency of the government's evidence of the weight and type of contraband being delivered. We also asserted his role as a minor participant and whether he had actual knowledge of what was in the trailer." (Id., ¶ 6.)

However, the record conclusively shows that Tran cannot prove prejudice because the trial transcript shows that McGinn argued the very things Tran claims an investigation would have uncovered. In his opening statement, McGinn pointed out that Tran was not involved in two of the three stops at issue. (Crim. Dkt. ECF 231, p. 13.) McGinn further explained that the only evidence against Tran was that "he's driving a truck that has illegal substances in it. It's not a truck he owns. . . . He was called to drive a truck. He drove a truck." (Id.) McGinn said Tran did not look inside the truck and argued there was insufficient evidence that Tran had "any knowledge of

---

[2] Tran also argues that had McGinn investigated the facts and the law, "Tran would have almost certainly accepted a five year plea deal." (2255 Dkt. ECF 1, p. 16.) The Court views this as a distinct allegation; it is addressed separately below.

anything that was in the truck." (Id., pp. 13–14.) He further asserted that "mere proximity" to the firearm was not sufficient for a guilty verdict on that count. (Id., p. 14.) McGinn instructed the jury to "pay close attention" to Tran's "limited involvement," and to ask "did he really have the intent? Did he really know what was going on, or was this just a situation, hey, we need you to drive a truck? That's all my client knew." (Id.)

McGinn's questioning of witnesses tracked this theme. For example, in his cross-examination of Trooper Haas, McGinn elicited testimony that Tran said he helped load the trailer but not any particular boxes. (Id., pp. 108–09.) In his cross-examination of Mr. Rowe, McGinn confirmed the boxes were sealed with shrink wrap when they were brought in for testing. (Id., pp. 149–50.) In his cross-examination of Special Agent Peterson, McGinn elicited testimony that Tran said he didn't know what was in the truck and asked questions indicating that Tran was "low man on the totem pole." (Crim. Dkt. ECF 234, pp. 213–15.) McGinn's work in this area was anything but deficient given that Tran's out-of-court statements to law enforcement officers was inadmissible hearsay unless elicited by the Government. *See United States v. Love*, 521 F.3d 1007, 1009 (8th Cir. 2008) (recognizing that defendant's exculpatory statement to law enforcement officer was inadmissible hearsay where offered by the defense. McGinn then leveraged that good work when he reiterated in his closing argument that Tran lacked knowledge of contraband and was simply "driving a truck." (Crim. Dkt. ECF 233, pp. 29–34.)

The only thing Tran identifies that McGinn did not specifically argue was that Tran was paid modest sums which were "more consistent with hauling furniture than hauling marijuana." (2255 Dkt. ECF 1, p. 16.) Given the other evidence McGinn elicited, this isolated failure would not be enough to establish prejudice. There was, in any event, testimony about payments to Tran, including Special Agent Peterson testifying that Tran told him "he would get paid from Mr. Nguyen once they arrived back in Texas" and had been paid $2,500 for a previous trip. (Crim Dkt. ECF 234, p. 189.) Once again, this was inadmissible hearsay that McGinn managed to get into the record, thus undermining any argument that his performance was deficient or caused prejudice. Moreover, although McGinn did not specifically mention the amount of money Tran was paid for driving the truck during his closing argument, he capably argued the larger theme that Tran was a mere driver who did not know there was anything illegal in the trailer. The fact the jury found Tran guilty does not mean McGinn's performance was deficient or caused prejudice. Tran's request for relief on this basis is therefore DENIED. *See Apfel*, 97 F.3d at 1076 (Court "need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice.").

12

C. *Failures Regarding the Plea Negotiation Process.*

Next, Tran alleges that McGinn failed to communicate any plea offers. "In *Lafler* [*v. Cooper*, 566 U.S. 156 (2012)], the Supreme Court recognized that defendants have a Sixth Amendment right to counsel during the plea-bargaining process." *Ramirez v. United States*, 751 F.3d 604, 607 (8th Cir. 2014). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Under *Frye*, a defendant must:

> demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel. [He] must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. . . . To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Id.* at 147. "This further showing is of particular importance because a defendant has no right to be offered a plea, nor a federal right that the judge accept it." *Id.* at 148–49 (citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) and *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

*Frye*—and the cases that follow—distinguish between a formal offer and informal plea offer. A formal offer's "terms and . . . processing can be documented," may be in writing, and "can be made part of the record . . . to ensure that a defendant has been fully advised." *Id*. at 146. By contrast, an informal offer includes "one that expressly contained no promises or assurances" or situations where the "several of the offer's terms lacked definition [and] the undefined terms were of the sort that require substantial negotiation and compromise." *Ramirez*, 751 F.3d at 608 & n.3 (8th Cir. 2014) (quoting *Merzbacher v. Shearin,* 706 F.3d 356, 359 (4th Cir. 2013)).

In his affidavit, McGinn asserts that Tran "declined the proposed plea agreement and elected to proceed to trial." (2255 Dkt. ECF 4, ¶ 2.) The wording—"the proposed plea agreement"—suggests a "formal" plea agreement. Yet McGinn provides no details regarding when the proposed plea agreement was communicated to McGinn or the terms of the offer. McGinn also does not explicitly state that he communicated the plea to Tran, although this is implicit. Even then, McGinn does not state when or how he communicated the plea to Tran.

The Government's response corroborates the existence of a formal plea agreement. The Government states that it "drafted a proposed plea agreement to plead to Count 2 of the Second

13

Superseding Indictment which was approved[3] on May 29, 2020." (2255 Dkt. ECF 7, p. 7.) The response further explains that "[t]he government recalls an in-person meeting with Mr. McGinn about Tran's interest in accepting a plea agreement" but "never received any indication from Mr. McGinn that Tran or either of the codefendants were interested in a plea agreement." (Id.) The Government included two emails that do not provide clarity on this point. (2255 Dkt. ECF 7-1.)

McGinn's statement that Tran declined the plea offer indicates McGinn *did* advise Tran of the plea. But McGinn's statement directly contradicts Tran's claims that McGinn did not communicate a plea offer to him. (2255 Dkt. ECF 1, p. 17.) "Where . . . the record does not affirmatively refute the factual assertions on which a movant's claim is based, a court is required to hold a hearing before making findings on a movant's credibility." *Roundtree v. United States*, 751 F.3d 923, 926 (8th Cir. 2014); *see also Thomas*, 737 F.3d at 1206 (holding that district courts may not make credibility determinations based on affidavits alone); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (courts may not dismiss 2255 petition without a hearing unless, *inter alia*, the allegations "are contracted by the record, inherently incredible, or conclusions rather than statements of fact").

Notably, the Government questions whether Tran would have accepted the plea agreement if he still claims his innocence. (2255 Dkt. ECF 7, p. 7.) The Government cites to *Engelen* for the proposition that a defendant can still show prejudice after rejecting a plea offer if he shows that "but for his counsel's advice, he would have accepted the plea. To command an evidentiary hearing, the movant must present some credible, non-conclusory evidence that he would have pled guilty had he been properly advised." *Id.* at 240.

On this point, Tran's declaration includes the following statement:

> I would have accepted the plea deal that I understand was offered to my co-defendant, Nguyen, in this matter. Regardless of whether I maintained my innocence, I recognize that the government had substantial circumstantial evidence and I would not have risked an effective 8.5 year prison sentence versus the much shorter effective sentence associated with the subject plea deal–given the risk associated with trial.

(2255 Dkt. ECF 8, p. 3.) Tran made this declaration "under penalty of perjury pursuant to 28 U.S.C. 1746 that the foregoing is true to the best of my knowledge, information and belief." (2255 Dkt. ECF 8, p. 3.)

There is reason to doubt Tran's statement that he would have accepted a plea deal. *See Wanatee v. Ault*, 101 F. Supp. 2d 1189, 1205 (N.D. Iowa 2000), *aff'd*, 259 F.3d 700 (8th Cir. 2001)

---

[3] Given the context, the Court presumes the "approval" was an internal approval within the U.S. Attorney's Office.

(adopting reasoning of the district court with respect to *Strickland*'s performance component and the district court's finding that defendant suffered *Strickland* prejudice). Even after trial, Tran maintained his innocence. At the joint representation hearing on April 30, 2021, Tran stated: "I would like to use a new attorney who could help me prove my innocence. Mr. McGinn has been helping me, but he has not been able to do that." (Crim. Dkt. ECF 268, p. 28.) This is the type of evidence the Court may consider. *See Wiggins v. United States*, 900 F.3d 618, 623 (8th Cir. 2018) ("[T]he court may consider a defendant's earlier unwillingness to accept responsibility in determining whether the defendant would have accepted a previously-offered plea agreement."). Still, McGinn's affidavit and the Government's brief use the passive voice in describing Tran's attitude toward a plea deal. (*See* 2255 Dkt. ECF 4, ¶ 5 ("Defendant gave no indication of wanting to proffer nor did he react to my inquiry about giving me authority to negotiate a plea agreement on his behalf."); id., ¶ 8 ("Defendant never made any further inquiry about the option of plea and/or proffer. . . . "); 2255 Dkt. ECF 7, p. 7 ("The government never received any indication from Mr. McGinn that Tran or either of the codefendants were interested in a plea agreement.").) This suggests a hearing is required to resolve the factual dispute.

In that regard, even if the record conclusively showed that Tran did not want to plead guilty, "the record shows only [Tran's] subjective conduct *in the absence of the proper advice*, when the question is what [Tran] would have done *had he been properly advised*." *Wanatee*, 101 F. Supp. 2d at 1205. To that end, Tran's declaration states: "Regardless of whether I maintained my innocence, I recognize that the government had substantial circumstantial evidence and I would not have risked an effective 8.5 year prison sentence versus the much shorter effective sentence associated with the subject plea deal—given the risks associated with trial." (2255 Dkt. ECF 8, p. 3.) The disparity between the maximum sentencing exposure going to trial and the sentence available under the plea agreement is "objective evidence" that but for McGinn's advice, Tran would have accepted the plea. *Wanatee*, 101 F. Supp. 2d at 1207.

The Government acknowledges that Tran "would have potentially received a lesser sentence if he did accept a plea agreement." (2255 Dkt. ECF 7, p. 8.) Thus, the record shows not only that Tran "potentially" would have received a lesser sentence, but a substantial likelihood of such a lower sentence. If Tran had pled guilty only to Count Two, he would have faced a mandatory minimum of five years instead of ten. Indeed, at sentencing (and even without acceptance of responsibility), Tran's Guideline range was 51 to 63 months, based on a total offense level of 24 and criminal history category I. (Crim. Dkt. ECF 302, ¶ 104.) Had he pled guilty and received acceptance credit, the Guidelines range would have been 37 to 46 months. It is highly unlikely that

a sentence above 60 months would have been imposed. Nor is there any reason to believe the Government would not have honored the proposed plea agreement or that the Court would have accepted it.

Relatedly, counsel has the "critical obligation" to "advise the client of 'the advantages and disadvantages of a plea agreement.'" *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (quoting *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)). "When the defendant's claim is that counsel misadvised him of the relative advantages of pleading guilty rather than proceeding to trial, in order to show prejudice, the defendant 'must show that, but for his counsel's advice, he would have accepted the plea.'" *See Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003) ((quoting *Engelen*, 68 F.3d at 241). "To avoid dismissal, 'the movant must present some credible, non-conclusory evidence that he would have pled guilty had he been properly advised.'" *Id*. (quoting *Engelen*, 68 F.3d at 241).

Tran alleges that McGinn was ineffective in plea negotiations by failing to advise Tran of the risks of going to trial versus taking a plea agreement. Tran claims he would have sought out a plea had McGinn explained the expected outcome of going to trial versus taking a plea. He points to the Government's conviction rate and the significant discrepancy between the ten-year term he faced—and ultimately received—versus the lower sentence he would have received had he taken the plea. (2255 Dkt. ECF 1, p. 17.)In response, McGinn states: "I had discussions with [Tran] about a proffer and explained it to him" and "I advised him of the maximum possible punishment and risks of going to trial." (2255 Dkt. ECF 4, ¶¶ 3, 4.) McGinn does not provide specifics about his "discussions," such as what he told Tran about the risks of going to trial. He alleges that Tran "gave no indication of wanting to proffer nor did he react to my inquiry about giving me authority to negotiate a plea agreement on his behalf." (Id., ¶ 5.) McGinn does not specify when he inquired about getting authority to negotiate a plea agreement or what he means that Tran "did not react." McGinn further asserts that Tran "was advised at the outset of the case as he had options to plea and/or proffer regardless of what his co-defendants did." (Id., ¶ 7.) McGinn's use of the passive voice leaves open the question of whether someone other than McGinn provided this advice to Tran. Regardless, again, there is inconsistency between the statements of McGinn and Tran.

Finally, Tran argues that McGinn failed to conduct any investigation and advise him regarding the impact of a § 924(c) conviction on his ability to earn good-time credits. "Effective assistance requires the provision of reasonably informed advice on material issues. 'An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under

*Strickland.*'" *Mayfield v. United States*, 955 F.3d 707, 711 (8th Cir. 2020) (quoting *Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (per curium)). For example, the Eighth Circuit concluded "counsel was not professionally reasonable in advising a client to plead guilty based on a mistaken understanding about parole, where '[m]inimal research would have alerted counsel to the correct parole eligibility date.'" *Id.* (quoting *Garmon v. Lockhart*, 938 F.2d 120, 121 (8th Cir. 1991)).

Here, Tran alleges:

> Regarding the plea deal, had McGinn conducted an investigation of the facts and law of the case, he would have been able to advise Tran of the stark difference between accepting a five year plea deal on the marijuana charge and receiving a sentence tainted by a 18 U.S.C. 924(c) conviction. This difference is driven in significant part because a convicted individual cannot receive First Step Act time credits with respect to a sentence tainted by a 924(c) conviction.

(2255 Dkt. ECF 1, p. 16.) Other courts have assumed—at least "for purposes of expediency"— "that the weight of prevailing norms supports the view that counsel must advise his client regarding ineligibility for good time credits for those convicted under 924(c)." *Young v. United States*, No. 3:23-CV-00494-DWD, 2026 WL 183477, at *7 (S.D. Ill. Jan. 23, 2026), *appeal docketed,* No. 26-1323 (7th Cir. Feb. 18, 2026).

McGinn does not directly respond to this aspect of Tran's claim. He states that he "advised [Tran] of the maximum possible punishment" but does not clarify what, exactly, he told Tran. (2255 Dkt. ECF 4, ¶ 4.) On this, the Court is left to speculate. *See Roundtree*, 751 F.3d at 926 ("Due to the general nature of the comment, the court can only speculate whether those discussions included Lindeman informing Roundtree the sentencing 'range' provided for by § 841(b)(1)(C) for Roundtree's circumstances consisted of a mandatory life sentence.").

In sum, there are at least three issues relating to the plea negotiation process for which a factual dispute exists: (i) whether McGinn communicated plea offers to Tran; (ii) whether McGinn advised Tran regarding the advantages and disadvantages of pleading guilty; and (iii) whether McGinn advised Tran of the impact of a conviction under § 924(c) on Tran's ability to earn good time credits while in prison. The Court must hold an evidentiary hearing on these three issues and therefore RESERVES RULING on these aspects of Tran's § 2255 petition.

*D. Conflict of Interest.*

Finally, Tran argues that McGinn labored under a conflict of interest because Le, Tran's codefendant and the leader of the conspiracy, paid McGinn's fees. Tran's argument implicates concerns recognized by the Supreme Court:

> Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise. One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest.

*Wood v. Georgia*, 450 U.S. 261, 268–69 (1981) (footnotes omitted). This is precisely what Tran says happened.

"A defendant's claim that he was denied effective assistance of counsel because his attorney labored under a conflict of interest is considered under several different standards." *Noe v. United States*, 601 F.3d 784, 789 (8th Cir. 2010). "To establish ineffective assistance of counsel, a defendant typically has to demonstrate that his counsel's performance was deficient and prejudicial." *Id.* (citing *Strickland*, 466 U.S. at 693). However, "[a] defendant who timely raises a claim of conflict of interest arising from joint representation is entitled to automatic reversal in the absence of a finding that no conflict existed." *Id.* (citing *Mickens v. Taylor*, 535 U.S. 162, 168 (2002)). "If the defendant did not raise the conflict of interest at trial, the defendant must show an actual conflict of interest that affected the adequacy of his representation." *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348–49 (1980)). "It is unclear whether *Cuyler* applies to all kinds of alleged conflicts of interest, or only those involving the joint representation of multiple codefendants." *Sharp v. United States*, 132 F.4th 1094, 1099 (8th Cir.), *cert. denied*, 145 S. Ct. 2809 (2025); *see also Morelos v. United States*, 709 F.3d 1246, 1252 (8th Cir. 2013) ("[W]e have expressly refrained from deciding whether the lowered burden in establishing prejudice applies to actual conflicts of interest which did not arise out of multiple representation.").

Notably, Tran does not allege that McGinn was engaged in joint representation even though the record shows that McGinn entered an appearance for Le on June 10, 2019, following Le's arrest the prior week. (Crim. Dkt. ECF 48). By that point, McGinn had been Tran's counsel of record for almost two months. (Crim. Dkt. ECF 11, ECF 22.) However, at Le's initial appearance on June 20, 2019, Le appeared with attorney Stu Dornan, and McGinn withdrew as counsel. (Crim. Dkt. ECF 50, ECF 54.) McGinn's affidavit does not mention or otherwise explain this course of events, but the brief nature of his representation of Le suggests it is a non-issue.

The fee arrangement requires closer analysis. Tran argues that it created a conflict of interest that deprived Tran of his right to the effective assistance of counsel because Le paid McGinn to be a "warm body" during the proceedings. The plan, allegedly, was for "Le's attorney [to do] the heavy lifting and that McGinn was essentially there to follow Le's attorney's lead."

18

(2255 Dkt. ECF 1, p. 18.) Tran asserts that this creates a conflict because Le was the leader of the conspiracy and "Tran would have identified Le as the source of the cargo he was hauling and the money he was paid to haul it." (Id.) He further asserts that "Le had substantial reasons to deter Tran from taking a plea." (Id.)

Tran does not offer any other details regarding the fee arrangement or submit evidence to substantiate his claims. For his part, McGinn does not deny that Le paid his fee for Tran's representation or suggest that he discussed the risks of this arrangement with Tran. (2255 Dkt. ECF 4.) Instead, McGinn's affidavit is entirely silent as to the fee arrangement specifically and conflict of interest allegation generally. (Id.)

Under *Strickland*, Tran "may prevail on an ineffective assistance claim resulting from either an actual or a potential conflict of interest." *United States v. Reed*, 179 F.3d 622, 625 (8th Cir. 1999). "A defendant asserting a *Strickland* claim of ineffective assistance due to a potential conflict would receive relief only 'by showing both that (1) [his] attorney had a potential conflict of interest and (2) the potential conflict prejudiced [his] defense.'" *United States v. Acty*, 77 F.3d 1054, 1057 n.3 (8th Cir. 1996) (quoting *Stoia v. United States*, 22 F.3d 766, 770 (7th Cir. 1994)).

The potential conflict in this case is made clear on the record concerning *another* joint representation issue. At the April 30, 2021, hearing regarding proposed joint representation for sentencing, Magistrate Judge Bremer detailed her concerns regarding the conflicts in this case:

> [Y]our circumstances may be totally different, and this might require the lawyer to make different arguments that might be at the disadvantage of one or the other of you so in order to say that you had a lower role in the offense, that you -- that you weren't as important in this whole conspiracy, to argue that the other two defendants are more important. So that is a conflict of interest right there for your lawyer because the lawyer -- even if all of you agree to what argument the lawyer should make, the lawyer also knows that -- that if everyone's actions are viewed evenly and equally, that makes the sentencing guidelines work in one way, but if you try -- if one person has a good argument to minimize their involvement, that's asking that the sentencing guidelines or the statutes be interpreted in a different way, in a more favorable way to that person.
>
> Similarly, on the issue of the gun, that's a mandatory minimum additional 5-year sentence for both of you -- these two defendants, Mr. Tran and Mr. Nguyen. So this is a complicated case, and when you get to three defendants, there is a conflict of interest because the lawyer has to be effective and zealously represent each one of you, and by asking one lawyer . . . to be independently acting for each of you and making the best position for each of you results in them having to adjust to take into the fact that they're also representing the other two people, and that's just the reality of it, and so it's . . . hard because you're entitled to independent and effective

19

assistance of counsel, and that's why we always appoint separate lawyers for everyone . . . .

(Crim. Dkt. ECF 268, pp. 16–17.) Judge Bremer's concerns caused the attorneys to withdraw their request for joint representation in the hearing. (Id., p. 24.)

Moreover, under *Strickland*'s first prong, "it requires no complex analysis to recognize that an attorney who functions under a conflict of interest generally acts unreasonably. Divided loyalties violate both Sixth Amendment requirements and well accepted rules of professional responsibility." *Caban v. United States*, 281 F.3d 778, 785 (8th Cir. 2002) (internal citations omitted). "A conflict of interest may adversely affect counsel's representation when it prevents an attorney from exploring potential plea opportunities, but only when 'a lesser charge or a favorable sentencing recommendation would be acceptable' to the prosecution." *Plunk v. Hobbs*, 766 F.3d 760, 765 (8th Cir. 2014) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 489–90 (1978)). Tran alleges that McGinn had divided loyalties because of the payment arrangement, and that Le's interests were served by Tran not taking a plea. McGinn does not dispute these allegations in his affidavit. The Government indicates a plea agreement with a lesser charge was available to Tran. (2255 Dkt. ECF 7, p. 7.) Tran alleges—although McGinn disputes—that McGinn never conveyed this proposed plea agreement to him. To the extent Tran can show McGinn engaged in a conflict of interest without his consent, he may be able to satisfy the "deficient performance" requirement. The Court therefore will hold a hearing on this issue, as well, and thus RESERVES RULING on this aspect of Tran's claims.

## IV.    CONCLUSION.

The Court DENIES IN PART and RESERVES RULING IN PART on Tran's Motion to Vacate, Set Aside, or Correct Sentence. The Court will hold an evidentiary hearing on July 17, 2026, at 10:00 a.m. in the U.S. District Courthouse in Council Bluffs, Iowa, or as soon thereafter as Tran's presence in the Southern District of Iowa can be arranged. The United States Marshals Service is directed to work with the Bureau of Prisons to arrange for Tran's presence at the hearing and to notify the Court if the scheduled date and time are not feasible. The Clerk of Court is directed to appoint counsel to represent Tran for the hearing pursuant to the Criminal Justice Act.

IT IS SO ORDERED.

Dated: April 20, 2026

_____
Stephen H. Locher
UNITED STATES DISTRICT JUDGE

20